UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JERMAINE FANN,

                                    Plaintiff,

                                                          Case # 14-CV-6187-FPG

v.
                                                          DECISION AND ORDER

NURSE ARNOLD et al.,

                                    Defendants.

Before this Court are Plaintiff Jermaine Fann's ("Plaintiff") Motion for Reconsideration (ECF No. 13), Motion for Default Judgment (ECF No. 18), Motion to Amend the Revised Second Amended Complaint (ECF No. 26), and Motion to Appoint Counsel (ECF No. 28).

## BACKGROUND

Plaintiff is a prisoner at Auburn Correctional Facility in Auburn, New York. He brings this *pro se* action against various prison officials for issues arising out of his incarceration at Orleans Correctional Facility ("Orleans") in Albion, New York. Because Plaintiff is proceeding *in forma pauperis*, the Court conducted an initial screening of his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and by Order dated May 7, 2015, the Court dismissed several claims and defendants from the lawsuit. ECF No. 12. Plaintiff moved for reconsideration of that Order (ECF No. 13), moved to amend his Revised Second Amended Complaint (ECF No. 26), and moved for the appointment of counsel (ECF No. 28). Defendants responded to Plaintiff's Motion to Amend on November 20, 2015. ECF No. 27.

## DISCUSSION

### I.   Motion for Reconsideration

Motions for reconsideration are governed by Local Rule of Civil Procedure 7(d)(3) and Federal Rules of Civil Procedure 59(e) and 60(b). The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation omitted). Accordingly, on a motion for reconsideration, a party may not merely offer the same "arguments already briefed, considered and decided" or "advance new facts, issues or arguments not previously presented to the Court." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990). The decision to grant or deny the motion for reconsideration is committed to "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

### A.   Retaliation Claim against Officer Anstey

The Court previously dismissed Plaintiff's retaliation claim against Officer Anstey, finding that while Plaintiff engaged in constitutionally protected speech or conduct by filing grievances and thus satisfied the first element of a retaliation claim, the alleged deprivation of

one meal was insufficient to constitute an adverse action to satisfy the second element of the claim. ECF No. 12, at 7-8. Plaintiff again asserts that the denial of one meal constitutes an adverse action, but he provides no authority or evidence that persuades this Court to deviate from its previous ruling. Plaintiff also contends that Officer Anstey verbally harassed him. ECF No. 13, at 3-5 (citing ECF No. 10, at ¶¶ 43, 45, 47, 48).

Officer Anstey's alleged statements to Plaintiff (ECF No. 10, at ¶ 43 ("You want to keep filing grievances, I'll make your time here even harder."), ¶ 45 ("I'll wipe my ass with you and your lawsuit.")) do not constitute adverse action because they are merely insulting or disrespectful, which does not give rise to a constitutional violation. *See Lunney v. Brureton*, No. 04 Civ. 2438 (LAK) (GWG), 2007 WL 1544629, at *16 (S.D.N.Y. May 29, 2007) ("In its prior ruling, the Court dismissed [Plaintiff]'s general allegations of threats and harassment because comments that are merely insulting or disrespectful do not give rise to a constitutional violation.") (citations and internal quotations omitted). There is no indication that Officer Anstey threatened bodily injury or that he committed physical violence. *Hernandez v. Goord*, 312 F. Supp. 2d 537, 545 (S.D.N.Y. 2004) (finding that the plaintiff stated a retaliation claim where he alleged several attacks and threats on his life as specific factual instances of retaliation against him for filing grievances).

The allegations that Officer Anstey "threatened" and "harassed" Plaintiff as a result of his grievance writing cannot meet the requirement that the plaintiff experience an adverse action. While "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). Only retaliatory conduct that

would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" may support such a claim. *Id.* at 493. This Court concludes that Officer Anstey's alleged threats cannot plausibly be viewed as deterring a person of ordinary firmness from exercising his or her First Amendment rights. Accordingly, Plaintiff's Motion for Reconsideration as to the retaliation claim against Officer Anstey is DENIED.

### B.      Retaliation Claim against Sergeant Andrews

Plaintiff correctly points out that the Court overlooked the retaliation claim against Sergeant Andrews. ECF No. 13, at 5-6. Because overlooked information is a proper basis for a motion for reconsideration, *see Analytical Surveys*, 684 F.3d at 52, Plaintiff's Motion for Reconsideration is granted as to this claim. For the reasons that follow, unless Plaintiff files a Fourth Amended Complaint, his claim will be dismissed with prejudice.

Plaintiff asserts that Sgt. Andrews retaliated against him after he complained to her and filed a grievance about the prison's food distribution policy. ECF No. 13, at 5-6 (citing ECF No. 10, at ¶¶ 31-33). Plaintiff alleges that on the same day he complained, Sgt. Andrews "had officers trash [Plaintiff's] cell allowing them to throw all [his] property in the shower, and made false claims of [his] cellmate and [him] smoking and had [them] put in for a[] urine test." *Id.*

"[A] plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes*, 239 F.3d at 492. Plaintiff has met the first element of a retaliation claim based on his allegations that he filed a grievance. As to the second element, which requires this Court to assess the retaliatory conduct, the adverse actions that Plaintiff alleges are insufficient to state a retaliation claim. Plaintiff vaguely asserts

that unnamed officers trashed his cell and claims that Sgt. Andrews ordered them to do so. He states that all of his property was thrown in the shower, but he does not specify what exactly was destroyed. Retaliatory destruction of a prisoner's personal property can qualify as an adverse action where a "substantial amount" of personal property is destroyed and "the conduct appears designed specifically to deter plaintiff's exercise of his constitutional rights." *Smith v. City of New York*, No. 03-Civ-7576 (NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (finding adverse action where the destruction of property was specifically directed against the plaintiff, violated prison regulations, and deprived the plaintiff of a substantial amount of personal property, including his legal papers); *Soto v. Iacavino*, No. 01 Civ. 5850 (JSM), 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (denying defendants' motion to dismiss the claims relating to the destruction of the plaintiff's property because the plaintiff alleged that *specific* corrections officers deliberately destroyed his property to retaliate against him for filing grievances). Here, Plaintiff's allegation of property destruction constitutes a *de minimis* act of retaliation and is insufficient to support his retaliation claim. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (holding that, to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment); *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc) (approving similar standard on the ground that "some non-*de minimis* showing of injury is necessary"), *vacated on other grounds*, 523 U.S. 574 (1998).

Additionally, the fact that Plaintiff was subjected to a single urine test does not constitute an adverse action that would deter an inmate from asserting his or her rights. *Partak v. Behrle*, No. 9:09-CV-1256 (FJS/ATB), 2011 WL 7629500, at *14 (N.D.N.Y. Sept. 12, 2011) (finding that the fact that the defendant ordered three urine tests for the plaintiff in three days did not

constitute adverse action for purposes of a retaliation claim); *see Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007). In *Bumpus*, the court held that "[u]rine tests are a fact of prison life . . . and I do not find that one urine test would chill a prisoner of ordinary firmness from filing grievances." *Id.* (citations omitted). That court found, and this Court agrees, that the urine test was "simply *de minimis* and therefore outside the ambit of constitutional protection." *Id.* (quoting *Dawes*, 239 F.3d at 493).

Accordingly, Plaintiff's Motion for Reconsideration is granted as to the retaliation claim against Sgt. Andrews. However, this Court finds that Plaintiff has not plausibly alleged facts to satisfy the adverse action element of this claim, and it must be dismissed. However, Plaintiff is granted leave to amend with respect to the alleged retaliatory destruction of property, because this Court cannot conclusively hold at this time that Plaintiff's allegations do not "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "*sua sponte* dismissals of a *pro se* complaint before . . . an opportunity to amend are frowned on in this Circuit." *Avent v. Herbert*, No. 02-0828Sr., 2007 WL 3355060, at *3 (W.D.N.Y. Nov. 5, 2007) (citations omitted). Plaintiff may not amend, however, as to the alleged retaliatory urine test because this is merely a *de minimis* injury and thus amendment would be futile. *Price v. Hasly*, No. 04-CV-0090S(SR), 2004 WL 1305744, at * (W.D.N.Y. June 8, 2004) ("[W]hile the usual practice is to allow leave to replead a deficient complaint, such leave may be denied where amendment would be futile.") (citations omitted). If Plaintiff wishes to amend his Third Amended Complaint regarding the destruction of property claim, he must do so within 30 days of this Order. If Plaintiff fails to file a Fourth Amended Complaint by that time, his claim against Sgt. Andrews will be dismissed with prejudice.

### C.   Denial of Access to Medical Records

Plaintiff argues that the Court improperly dismissed his denial of access to medical records claim. ECF No. 13, at 6-8. Plaintiff fails to meet the demanding standard to obtain reconsideration on this issue. His motion largely reiterates points that were previously made, which is not an appropriate basis for seeking reconsideration. When the Court dismissed this claim with prejudice, it observed that Plaintiff at most alleged a delay in obtaining his medical records. The Court also noted that Plaintiff failed to allege harm resulting from that delay. Moreover, Plaintiff continues to assert that he has a "property" interest in these medical records. As explained in the Court's prior Order (ECF No. 12, at 4), Plaintiff's medical records are not his "property" for purposes of this claim. *See Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 674 (S.D.N.Y. 2009) (citing *Gotkin v. Miller*, 514 F.2d 125, 129 (2d Cir. 1975) and *Webb v. Goldstein*, 117 F. Supp. 2d 289, 295 (E.D.N.Y. 2000) (discussing the principle that there is no property interest in one's medical records)). Plaintiff fails to point to controlling decisions or data that the Court overlooked, which is required to obtain reconsideration. Thus, Plaintiff's Motion for Reconsideration as to the denial of access to medical records claim is DENIED.

### D.   Unconstitutional Policy

Plaintiff also correctly points out that the Court overlooked his claim that the Orleans food distribution policy is unconstitutional. ECF No. 13, at 8-9. Accordingly, Plaintiff's Motion for Reconsideration is granted as to this claim. For the reasons that follow, however, this claim is also dismissed with prejudice.

Plaintiff asserts that the Orleans food distribution policy is unconstitutional because it is vague and used to harass and punish inmates. ECF No. 13, at 8-9 (citing ECF No. 10, at 20-22).

Plaintiff describes the policy as requiring the inmate to stand at his door when food is being distributed. If the inmate is not at his door, he is considered to have refused his meal and will not be fed on that occasion.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) (citations omitted). A prisoner's constitutional rights may be properly limited or retracted to maintain institutional security and preserve internal order. *Id.* "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* at 547. Thus, courts "have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* (citations omitted).

Plaintiff's displeasure with this policy is not enough to make it unconstitutional. Although Plaintiff would prefer to "sit at his desk" or "wash his hands" (ECF No. 10, at ¶¶ 27, 39) as a meal is handed out, prison officials have the discretion to implement this type of policy. With the exception of the allegation that he was deprived a single meal, as explained above, Plaintiff does not contend that this policy led prison officials to withhold meals from him. *See Williams v. Coughlin*, 875 F. Supp. 1004, 1013 (W.D.N.Y. 1995) (explaining that the withholding of food from a prisoner for two days or more may state a claim under the Eighth Amendment and that food deprivation should not be used as a disciplinary measure).

Accordingly, Plaintiff's Motion for Reconsideration is granted as to the unconstitutional policy claim, however, for the reasons stated above, this claim is dismissed with prejudice.

## II.   Motion for Default Judgment

On August 31, 2015, Plaintiff moved for default judgment against all defendants.   ECF No. 18.   On September 4, 2015, Defendants wrote a letter to this Court requesting that default not be entered (ECF No. 19) and on September 8, 2015, Defendants filed a Notice of Appearance (ECF No. 20).   On September 14, 2015, Plaintiff wrote a letter to this Court in which he stated, "I do not oppose the Attorney General's Office request to not enter default."   ECF No. 24. Accordingly, this Court considers Plaintiff's Motion for Default Judgment to be withdrawn.

## III.   Motion to Amend Revised Second Amended Complaint

Under Federal Rule of Civil Procedure 15(a)(2), leave to file an amended complaint should be freely granted unless the proposed amended complaint alleges claims or seeks to add parties that are untimely, prejudicial, or futile.   *See Foman v. Davis*, 371 U.S. 178, 182 (1962). A document filed *pro se* must be "liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks and citations omitted).   An amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect."   *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom.*, *Vesco & Co., Inc. v. Int'l Controls Corp.*, 434 U.S. 1014 (1978); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiff filed his original Complaint on April 18, 2014.   ECF No. 1.[1]   Thereafter, Plaintiff moved to amend his Complaint (ECF No. 3), the Court granted his motion (ECF No. 6),

---

[1]     This Court notes that Plaintiff's original Complaint contains a Motion for Preliminary Injunction wherein Plaintiff requests an Order directing the Orleans superintendent, staff, and affiliates to: (1) refrain from any retaliation or retaliatory conduct; (2) provide Plaintiff with his guaranteed three meals a day; (3) provide Plaintiff with continued medical care and assistance; (4) not destroy Plaintiff's legal materials; (5) provide Plaintiff with

and he filed his Second Amended Complaint (ECF No. 7).   On October 2, 2014, Plaintiff filed his Revised Second Amended Complaint.  ECF No. 10.   Plaintiff's proposed Third Amended Complaint (ECF No. 26) contains six claims that are addressed in turn below.

### A.      First Claim: Unconstitutional Due Process Violation

In Plaintiff's proposed Third Amended Complaint, he alleges that his due process rights were violated when he was denied access to his medical records.  ECF No. 26, at 5-9.  The Court dismissed this claim with prejudice on May 7, 2015 (ECF No. 12) and this Court has now denied reconsideration.  "The dismissal with prejudice is *res judicata* on the merits of a claim in favor of the defendants." *Santiago v. Booker*, No. 06-CV-282A, 2008 WL 850246, at *1 (W.D.N.Y. Mar. 27, 2008) (citing *Nemaizer v. Baker*, 793 F.2d 58, 60-61 (2d Cir. 1986)).  Accordingly, Plaintiff is barred from reviving this claim in his Third Amended Complaint.

### B.      Second Claim: Retaliation Related to Medical Records by Nurses Arnold and Carlotta

In Plaintiff's proposed Third Amended Complaint, he elaborates on a claim against Nurses Arnold and Carlotta for alleged retaliatory conduct after Plaintiff filed a grievance related to accessing his medical records.  ECF No. 26, at 10-13.  In its May 7, 2015 Decision and Order, the Court determined that this claim may go forward.  ECF No. 12, at 6.  Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

---

continued access to the courts; and (6) refrain from any physical and/or mental abuse.  ECF No. 1.  The Court need not consider this motion because it is moot—Plaintiff was transferred from Orleans to Auburn Correctional Facility after the motion was filed.  Moreover, Plaintiff's Amended Complaint (ECF No. 4), Second Amended Complaint (ECF No. 7), and Revised Second Amended Complaint (ECF No. 10) do not request preliminary injunctive relief.  An amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp.*, 556 F.2d at 668; *see also Shields*, 25 F.3d at 1128.

**C.   Third Claim: Unconstitutional Policy and Retaliation by Officer Anstey and Sergeant Andrews**

The Court dismissed the retaliation claim against Officer Anstey with prejudice on May 7, 2015 (ECF No. 12) and this Court has now denied reconsideration.   "The dismissal with prejudice is *res judicata* on the merits of a claim in favor of the defendants." *Santiago*, 2008 WL 850246, at *1.   Accordingly, Plaintiff is barred from reviving these claims against Officer Anstey in his Third Amended Complaint.   Additionally, as explained above, the unconstitutional policy claim has been dismissed with prejudice and may not proceed in Plaintiff's Third Amended Complaint.   Finally, Plaintiff's claims against Sgt. Andrews may not proceed in his Third Amended Complaint, but Plaintiff has been granted leave to amend with respect to his destruction of property claim.

**D.   Fourth Claim: Retaliation Related to Medical Care by Nurse Stern**

In Plaintiff's proposed Third Amended Complaint, he elaborates on a claim against Nurse Stern for retaliation related to providing medical care.   ECF No. 26, at 21-26.   In its May 7, 2015 Decision and Order, the Court determined that this claim may go forward.   ECF No. 12, at 12. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

**E.   Fifth Claim: Denial of Medical Care**

The Court dismissed Plaintiff's denial of medical care claim without prejudice on May 7, 2015.   ECF No. 12, at 10-12.   In Plaintiff's Third Amended Complaint, he asserts this claim again against Nurse Stern, Nurse Clarey, Nurse Carlotta, Dr. Lewis, and Dr. Carl Koenigsmann. For the reasons that follow, this claim may proceed against Nurses Stern, Clarey, and Carlotta, and Dr. Lewis, but not against Dr. Koenigsmann.

The Supreme Court has held that when prison officials deny medical care to prisoners, they violate the Eighth Amendment only if the denial rises to the level of "deliberate indifference

to serious medical needs." *See Estelle*, 429 U.S. at 104.  The deliberate indifference standard has an objective and subjective prong.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations and internal quotations omitted).  "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (citations and internal quotation marks omitted).

Second, the official must act with a "culpable state of mind" which, the Second Circuit has held, equates to "recklessness" as that term is used in criminal law.  *See id.* at 140; *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam).  An official acts with a sufficiently culpable state of mind when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  Critically, an inadvertent failure to provide adequate medical care or mere negligence is not "repugnant to the conscience of mankind" and thus does not violate the Constitution.  *See Estelle*, 429 U.S. at 105-06 (internal quotations and citation omitted).  Stated differently, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.

### 1.    Nurse Stern

According to the proposed Third Amended Complaint, Plaintiff told Nurse Stern about his "vomiting and severe chronic abdominal pain" on April 1, 2014.  ECF No. 26, at ¶ 68.  Nurse Stern then "left without examining [Plaintiff] or providing any medical treatment." *Id.*  Plaintiff indicated that Nurse Stern would respond to Plaintiff's sick calls by simply giving him Ibuprofen

or Tylenol. *Id.* at ¶ 71. Plaintiff also allegedly told Nurse Stern that those medications did not work, *i.e.*, they did not stop his vomiting or pain. *Id.* at ¶ 72. Plaintiff alleges that he made several requests to Nurse Stern to see a doctor, but his requests were always disregarded. *Id.* at ¶¶ 73, 74.

On May 2, 2014, Plaintiff submitted a sick call request. *Id.* at ¶ 81. When Nurse Stern arrived, Plaintiff told her that he was "continuing to suffer from abdominal pain and vomiting and [his] condition [wa]s getting wors[e]." *Id.* Plaintiff alleges that Nurse Stern denied him medical care and stated "you didn't sign up for sick call." *Id.* That same day, Nurse Stern gave Plaintiff Tylenol even though he previously explained to her that it was ineffective. *Id.* at ¶ 82.

On June 1, 2014, Nurse Stern gave Plaintiff Milk of Magnesia, and he "immediately . . . began vomiting uncontrollably." *Id.* at ¶ 83. Nurse Stern was called to return to Plaintiff's cell and she allegedly "denied [him] any further treatment or assistance." *Id.* Plaintiff alleges that, for several weeks and months, he told Nurse Stern about his abdominal pain and vomiting. *Id.* at ¶ 85. Nurse Stern allegedly "took no steps to find the source of [Plaintiff's] pain and suffering and refused [his] requests to be taken to the medical official who could properly diagnose [his] condition." *Id.* at ¶ 86.

On June 18, 2014, Plaintiff allegedly tried to talk to Dr. Lewis, but Nurse Stern interfered by telling Dr. Lewis not to talk to Plaintiff and pushing him away from Plaintiff's cell. *Id.* at ¶ 87. Plaintiff alleges that throughout the entire day, officers told Nurse Stern about Plaintiff's symptoms and his ongoing requests for medical attention and Nurse Stern "refused to see [him]." *Id.* at ¶ 88.

On August 1, 2014, Plaintiff asked Nurse Stern to take him to a medical official or hospital for treatment and she refused. *Id.* at ¶ 94. On August 10, 2014, Plaintiff signed up for a

sick call and Nurse Stern allegedly "denied [him] medical attention. That same week Nurse Stern denied [his] requests to see a[] doctor." *Id.* at ¶ 96. On August 15, 2014, Nurse Stern again denied Plaintiff's sick call. *Id.* at ¶ 97. When officers requested emergency assistance, Nurse Stern responded five hours later but "refused to treat" Plaintiff. *Id.*

Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Nurse Stern. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### 2.   Nurse Clarey

According to the proposed Third Amended Complaint, Nurse Clarey responded to Plaintiff's sick call requests on several occasions and gave him Ibuprofen or Tylenol. ECF No. 26, at ¶ 71. Plaintiff alleges that he informed Nurse Clarey that those medications did not work, *i.e.*, they did not stop his vomiting or pain. *Id.* at ¶ 72. Plaintiff also alleges that he made many requests to Nurse Clarey "to see a doctor or to be provided with a[] more effective treatment." *Id.* at ¶ 73. Instead of fulfilling his requests, Nurse Clarey gave Plaintiff "sarcasm." *Id.* at ¶ 74.

On April 16, 2014, Plaintiff was waiting for Nurse Clarey to respond to his sick call request. *Id.* at ¶ 75. Plaintiff alleges that Nurse Clarey "walked right pass[ed] [him] and denied [him] medical attention and treatment as punishment for allegedly not having [his] lights on and not standing on [his] door" and that she "knowingly denied and refused to answer [his] sick call requests." *Id.* at ¶ 76. On the same day, Nurse Clarey brought Plaintiff his medication. *Id.* at ¶ 77. When Plaintiff requested an emergency sick call, Nurse Clarey allegedly threw his medication on the floor and stated, "I don't have time for this." *Id.*

On or about May 1, 2014, Plaintiff told Nurse Clarey that the Prilosec Dr. Lewis gave him was not working and was making his symptoms worse. *Id.* at ¶ 80. Nurse Clarey allegedly

denied Plaintiff's request to see a doctor. *Id.* Plaintiff alleges that, for several weeks, he told Nurse Clarey about his abdominal pain and vomiting. *Id.* at ¶ 85. Despite this, Nurse Clarey "took no steps to find the source of [Plaintiff's] pain and refused [his] requests to be taken to the medical official who could properly diagnose [his] condition." *Id.* at ¶ 86.

Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Nurse Clarey. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### 3.    Nurse Carlotta

According to the proposed Third Amended Complaint, Nurse Carlotta responded to Plaintiff's sick call requests on several occasions and gave him Ibuprofen or Tylenol. ECF No. 26, at ¶ 71. Plaintiff alleges that he informed Nurse Carlotta that those medications did not work, *i.e.*, they did not stop his vomiting or pain. *Id.* at ¶ 72. Plaintiff also alleges that he made many requests to Nurse Carlotta "to see a doctor or to be provided with a[] more effective treatment" (*Id.* at ¶ 73), but that Nurse Carlotta "would completely deny [his] requests" (*Id.* at ¶ 74).

On or about August 21, 2014, Plaintiff asserts that Nurse Carlotta "outright denied [him] medical attention and care as punishment for [his] complaints. Nurse Carlotta looked at [him] and stated, 'you don't get anything.'" *Id.* at ¶ 98.

Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Nurse Carlotta. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### 4.    Dr. Lewis

According to the proposed Third Amended Complaint, Plaintiff saw Dr. Lewis on or about April 23, 2014. *Id.* at ¶ 78. Plaintiff asserts that Dr. Lewis only gave him a "cursory look"

through the window, even though Plaintiff informed him that he was "having severe chronic abdominal pain, vomiting, and trouble and painful bathroom problems." *Id.* Dr. Lewis prescribed Plaintiff Prilosec without conducting an examination. *Id.* Plaintiff alleges that immediately after taking the Prilosec, he was dizzy, had dry mouth, and his abdominal pain and vomiting did not improve. *Id.* at ¶ 79.

On July 3, 2014, Plaintiff was temporarily transferred to Wende Correctional Facility for an ultrasound, which indicated that Plaintiff needed to undergo further testing. *Id.* at ¶ 89. Plaintiff asserts that Dr. Lewis refused to order additional tests because he believed that Plaintiff would be leaving Orleans soon. *Id.* at ¶ 90.

On August 6, 2014, Plaintiff saw Dr. Lewis and informed him of his abdominal pain and vomiting, and that the medications he received did not relieve his symptoms. *Id.* at ¶ 95. Dr. Lewis allegedly told Plaintiff that he did not have a life threatening condition and was only causing "a lot of paperwork and time." *Id.*

Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Dr. Lewis. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### 5.   **Dr. Carl Koenigsmann**

In Plaintiff's proposed Third Amended Complaint, he alleges that Dr. Koenigsmann, the Deputy Commissioner/Chief Medical Officer of the New York State Department of Corrections and Community Supervision ("DOCCS"), "created a[] policy that allows medical officials at Orleans Correctional Facility to conduct sick call in a[] manner that does not provide an adequate examination and does not provide timely medical assistance to those in need." *Id.* at ¶ 105. Plaintiff also alleges that Dr. Koenigsmann "implemented, enforced, and failed to rectify a

policy, practice, and custom allowing medical officials at Orleans Correctional Facility to knowingly deny inmates medical attention as punishment for alleged rule violations." *Id.* at ¶ 106. Plaintiff asserts that Dr. Koenigsmann was "responsible for ensuring that medical officials at Orleans Correctional Facility obey the Constitution and laws of the United States." *Id.* at ¶ 107. Plaintiff concludes that Dr. Koenigsmann was deliberately indifferent to his medical needs. *Id.* at ¶ 108.

A supervisory defendant may not be held liable in a § 1983 action on a theory of *respondeat superior. Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted). "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility," *Hernandez,* 341 F.3d at 144, and a plaintiff must plead sufficient facts to establish the personal involvement of each particular defendant in the alleged violation. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

To establish the personal involvement of a supervisory official, the plaintiff must demonstrate that: (1) the defendant participated directly in the alleged conduct; (2) the defendant did not remedy a wrong after learning of it through a report or appeal; (3) the defendant formed a policy or custom under which the conduct transpired, or allowed the policy or custom to continue; (4) the defendant's supervision of subordinates who engaged in the conduct was grossly negligent; or (5) the defendant demonstrated deliberate indifference to the rights of inmates by failing to act on information showing that the conduct was occurring. *Colon*, 58 F.3d at 873.

Here, Plaintiff merely offers conclusory allegations that Dr. Koenigsmann created and enforced an improper medical policy without any evidence that such a policy existed. Moreover, the Court dismissed this claim without prejudice against Dr. Koenigsmann in its May 7, 2015

Order (ECF No. 12, at 10-12) and Plaintiff has again failed to allege sufficient facts to plausibly state a claim against Dr. Koenigsmann. Accordingly, the denial of medical care claim against Dr. Koenigsmann is dismissed with prejudice and may not proceed in Plaintiff's Third Amended Complaint.

### F.   Sixth Claim: Breach of Privacy Against Nurse Arnold, Nurse Carlotta, and Dr. Lewis and Retaliation

The Court previously dismissed the breach of privacy claim against Nurse Arnold with prejudice on May 7, 2015 (ECF No. 12) and this Court has now denied reconsideration. "The dismissal with prejudice is *res judicata* on the merits of a claim in favor of the defendants." *Santiago*, 2008 WL 850246, at *1. Accordingly, Plaintiff is barred from reviving this claim in his Third Amended Complaint. However, the Court found that the breach of privacy claim against Nurse Carlotta and Dr. Lewis could go forward. ECF No. 12, at 3. Thus, this claim may proceed in Plaintiff's Third Amended Complaint against Nurse Carlotta and Dr. Lewis only.

Plaintiff also alleges that Nurses Carlotta and Arnold retaliated against him. According to his Third Amended Complaint, Nurse Carlotta provided "false statements" to Nurse Arnold and the grievance panel. ECF No. 26, at ¶ 125. Plaintiff also asserts that Nurses Carlotta and Arnold provided "false statements to cover up Nurse Carlotta's professional misconduct and to continue to deprive [Plaintiff] of [his] right to access and review [his] medical records as retaliation for filing a[] grievance due to the improper deprivation of [his] medical records." *Id.* at ¶ 126.

As explained in detail above, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes*, 239 F.3d at

492. Here, Plaintiff satisfies the first element of a retaliation claim by alleging that he filed a grievance, but he fails to establish that adverse action was taken against him.  Merely asserting that "false statements" were made as a result of filing a grievance without any information about the nature of the statements, what harm such statements caused, or when the statements were made in relation to when the grievance was filed is insufficient to state a claim for retaliation. Accordingly, this claim is dismissed without prejudice and Plaintiff is granted leave to amend. *Avent*, 2007 WL 3355060, at *3 ("*[S]ua sponte* dismissals of a *pro se* complaint before . . . an opportunity to amend are frowned on in this Circuit.").  If Plaintiff wishes to amend his Third Amended Complaint regarding this claim, he must do so within 30 days of this Order.   If Plaintiff fails to file a Fourth Amended Complaint by that time, his retaliation claim against Nurses Carlotta and Arnold will be dismissed with prejudice.

## IV.    Motion to Appoint Counsel

Plaintiff claims that the appointment of counsel is necessary because this "is not a straight forward case" and is too "complex" for him to handle on his own, his "status as a prisoner alone shows that he will not be able to adequately proceed on his own," and "the examination of witnesses will be best conducted by a[] properly trained counsel." ECF No. 28.  For the reasons that follow, Plaintiff's motion for the appointment of counsel is denied without prejudice to renew.

There is no constitutional right to counsel in civil cases. *See In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).  Although the court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C. § 1915(e), *see, e.g.*, *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), such appointment is within the court's broad discretion. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).   The factors to be

considered in deciding whether to appoint counsel include: (1) "whether the indigent's position seems likely to be of substance;" (2) "the indigent's ability to investigate the crucial facts;" (3) "whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;" (4) "the indigent's ability to present the case" and "the complexity of the legal issues;" and (5) "any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Id.* at 61-62.

"Volunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). Upon review of Plaintiff's motions and complaints, this Court finds that the appointment of *pro bono* counsel is not warranted at this stage of the litigation. Plaintiff's submissions are detailed and adequately describe the events that led to his alleged injuries, the factual circumstances surrounding Plaintiff's claims do not appear unusually complicated, and Plaintiff has shown that he is capable of presenting his case. Plaintiff has drafted several legible, organized, cogent, and appropriate pleadings and motions. *See Castro v. Manhattan E. Suite Hotel*, 279 F. Supp. 2d 356, 358 (S.D.N.Y. 2003) (denying the appointment of counsel after noting that "there is no indication that [plaintiff] lacks the ability to present his case").

This Court finds no "special reason" why appointment of counsel at this stage would be more likely to lead to a just determination. *See Boomer v. Deperio*, No. 03-CV-6348L, 2005 WL 15451, at *1-2 (W.D.N.Y. Jan. 3, 2005) (denying motion to appoint counsel despite the plaintiff's claims that the matter was complex and he had limited knowledge of the law); *Harris v. McGinnis*, No. 02 Civ. 6481 (LTSDF), 2003 WL 21108370, at *2 (S.D.N.Y. May 14, 2003) (application denied where the plaintiff "offered no special reason why appointment of counsel . .

. would increase the likelihood of a just determination"). It is Plaintiff's responsibility to either retain counsel or to proceed *pro se*.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration (ECF No. 13) is GRANTED IN PART and DENIED IN PART, his Motion for Default Judgment (ECF No. 18) is deemed WITHDRAWN, his Motion to Amend the Revised Second Amended Complaint (ECF No. 26) is GRANTED IN PART and DENIED IN PART, and his Motion to Appoint Counsel (ECF No. 28) is DENIED without prejudice to renew.

The claims that may proceed in Plaintiff's Third Amended Complaint are the Second Claim (retaliation related to medical records by Nurses Arnold and Carlotta), the Fourth Claim (retaliation related to medical care by Nurse Stern), the Fifth Claim (against defendants Stern, Clarey, Carlotta, and Lewis only), and the breach of privacy portion of the Sixth Claim (against Nurse Carlota and Dr. Lewis only). Plaintiff is granted leave to amend with respect to his retaliatory destruction of property claim against Sgt. Andrews and his retaliatory false statements claim against Nurses Carlotta and Arnold.

IT IS SO ORDERED.

Dated: May 16 2016
　　　　Rochester, New York

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　HON. FRANK P. GERACI, JR.
　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　United States District Court